JOYNE)S, J.
The prisoners, who were tried jointly, before pleading to the indictment, moved the court to have the record of the examining court produced; and the record having been produced, they moved the court to quash the indictment, on the ground that the record of the examining court did not show by what authority the said court examined the prisoners, and that the warrant by which the prisoners were committed for examination, if any there was, ought to have been made a part of the said record. Thereupon the attorney for the Commonwealth produced in court, as the warrant for the examination, a paper purporting to be signed by a justice of the peace, Mated December 13, 1866, and certifying, in due form, that he had that day committed the prisoners (naming them) that they and each of them might be examined by the county court for the murder of one John Wootten. And then the prisoners assigned another ground for their motion, to wit, that there was a variance between the record of the examining court “so produced” and the counts of said indictment, and each of them, because the prisoners were examined at a regular term of the county court, held on the same day on which they were committed for examination, as appeared by the warrant of the justice. *
To maintain the first of these grounds, the counsel for the plaintiffs in error relies upon the decision of the General Court in McCaul’s case, 1 Va. Cas. 271, which has since been adhered to, in which it was held, that the warrant for summoning an examining court is part of the record of that court. But the court did not decide that an examination will be insufficient, if the clerk, in making up the record of the examining court, omits to embrace in it the warrant by which that court was summoned. The point decided was, that where the record of the proceedings of the examining court states that the prisoner was examined for felony, in general terms, not describing the particular offence, the Circuit Court may, on a motion to quash the indictment, or on a plea in abatement, on the ground that the prisoner has not been examined for the offence for which he is indicted, look into the warrant summoning the justices for the purpose of identifying the offence. In this case, the offence for which the prisoners were examined was fully described in the record of the proceeding of the examining court, so that there was no occasion to *882 look at the certificate of the justice for the purpose of identifying' the offence.
When the examination is had before a special session of *the court called for the purpose, the warrant of the justice is the authority, and the only authority, under which the courtis held. But the regular monthly term sits by authority of the general law. It has authority to examine a prisoner committed for examination, unless the justice, in his discretion, determines to call a special session of the court. If he commits the prisoner generally for examination, without issuing his warrant for a special session, he must be understood as determining, in his discretion, that there shall be no special session, and that the examination shall be at the regular term.
The provision of the Code requiring that the justice shall certify the commitment to the clerk, and the provision requiring the clerk to inform the Attorney for the Commonwealth of such certificate, seem to have been designed to bring the case to the notice of the court and the attorney, and thus to avoid the possibility of its being overlooked. They are analogous to the provision of chapter 205, section 10, requiring the clerk of the examining court to certify the order, depositions, &c., to the attorney for the Commonwealth in the Circuit Court. It may be contended, with great force, that they are merely directory, the one to the clerk and the other to the justice, and that the omission to observe them in any case would not vitiate the proceedings. It would hardly be contended that the omission of the clerk to give information of the certificate to the Commonwealth’s attorney would have that effect. If not, why should that effect be produced by the failure of the justice to certify the commitment to the clerk? It is not necessary, however, to decide this point.
It has often been decided that the warrant of commitment is no part of the record, and cannot be looked to by the Circuit Court for any purpose. In McCaul’s case, above cited, it was held that it could not be looked to on a motion to quash, for the purpose of identifying the offence *for which the prisoner was examined. It is also well settled that after the prisoner has been indicted, there can be no enquiry into the sufficiency of the warrant, or into the regularity of the commitment. In Murray’s case, 2 Va. Cas. 504, the warrant of commitment was made part of the record by the prisoner, and was, therefore, looked to for the purpose of identifying the offence. But it was insisted that the warrant of commitment thus made part of the record, was fatally defective in not' stating that the party was charged on oath, and that the indictment should be quashed for that reason. The general court, after overruling the objection to the warrant, held, that even if the warrant had been bad, “it would be no ground to quash the indictment, because the indictment charged the prisoner with an offence for which he had been previously examined; and whether the original mittimus was legal or not, yet clearly, after he had been remanded to jail by the examining court, his second commitment was entirely regular. In Cloer’s case, 8 Gratt. R. 606, the prisoner pleaded in abatement, that he was committed by the justice without an enquiry or examination into the truth of the offence where-' with he was charged, or for which he was committed. The plea was rejected; and he moved to quash on the same ground. The general court approving the decision in Murray’s case, held that the plea was properly rejected, and the motion to quash properly overruled. Judge fiomax delivering the opinion of the court, said: “Whatever inconvenience he [the prisoner] may complain of as to the examination, or want of examination, before the justice, they can have no relevancy as objections to the indictment, which has given the sanction of the grand inquest of the county to the charge for which the justice committed him. At that stage of the proceedings, after the finding of the grand jury upon the examinations and proofs before them, charging him with the murder, what ^defence in reason or in law, can or ought it to be to the prisoner, that the justice who committed him for the crime with which the grand jury have charged him, did not, in his prior examination, examine the case according to the legal rules of evidence?” The doctrine of these cases was approved and followed by this court in Wormeley’s case, 10 Gratt. 658, where there was a motion to quash the indictment on the ground that the commitment was made by a person who had no authority to make it.
The principle thus established applies to this case. If the prisoner could not, on a motion to quash, be allowed to show that the original commitment was by an illegal warrant, or without investigation, or by a person without authority, they cannot be allowed to show that the commitment was not duly certified to the clerk, however essential that may be to the regularity or legality of the commitment. The essential thing into which alone, of all the proceedings before the indictment, the court can enquire, is, whether the prisoners were duly examined and committed by the examining court for the same offence for which they were indicted.
In the present case, however, it does appear that the prisoner was duly committed, and that the commitment was duly certified to the clerk. The certificate, though not incorporated by the clerk into the record of the examining court, was produced by the attorney for the commonwealth. Its genuineness was not disputed. On the contrary, its genuineness was conceded, by making it the ground of an objection to the indictment, to be presently considered. The court, in the bill of exceptions, speaks of it as “the warrant of Nelson Smith, a justice of the peace, herein inserted,” and thus, in effect, declare it to be authentic.
*883 The other ground of the motion to quash is, that the commitment, as shown by the certificate of the justice, was *made on the 13th December, 1866, and that the examination was had by the county court, ata regular term held on the same day. This objection is based on the authority of Mendum’s case, 6 Rand. 704. That decision, however, was made under the law as it stood in the Revised Code of 1819, and has no application to the provisions of the present Code. By the Code of 1819, ch. 169, the committing justice was required to issue his warrant summoning the justices to meet for the examination of the fact, on a certain day not less than five, nor more than ten days after the date of the warrant. If the justices failed to meet, the examination stood adjourned to the next regular term of the county court. The court might continue the examination from term to term, provided such continuance, unless on the application of the prisoner, should not be beyond tile third term after his commitment for examination. Mendum was committed two days before the December term. The examining court was called to meet seven days after the December court day. It failed to meet, and so stood adjourned to the January term. The general court held, that the January term was to be counted as the first term after the commitment, so that the examination at the March term was regular. This, of course, involved a decision that the examination could not regularly have been had at the December term; and obviously it could not, because five days did not intervene between the day of the commitment and December court day, and also because an examination could not be had at a regular term, unless the called court failed to meet, or adjourned to the regular term.
By the Code of 1849, ch. 205, $$ 2, 3, the examination might be had at a regular term, in the discretion of the justice, and in that case no particular length of time was required to intervene between the commitment and the examination. That requirement was made only when a ^special session was called. It is argued that the Legislature must have intended to allow a prisoner some time for preparation. To this it may be replied, 1. That the statute makes no such provision ; and 2. That the Legislature doubtless thought that all injustice might be avoided by an application to the court for a postponement of the examination.
The remaining ground of error assigned is the refusal of the court to grant a new trial to the plaintiffs in error. Two grounds for a new trial have been suggested: 1. That the verdict was contrary to the law and the evidence; and 2. The fact that the court granted a new trial to Charles Press, who was indicted and tried jointly with the plaintiffs in error, and who was likewise found guilty by the jury.
No question has been made as to the law applicable to the facts, so that the first ground must be considered with referenc ' to the evidence alone.
It has been long settled as the rule of this court, that a judgment refusing a new trial will not be reversed, unless the evidence is plainly insufficient to warrant the verdict. Vaiden’s case, 12 Gratt. 717; Kate’s case, 17 Gratt. 561. It is very clear that this is not a case in which a new trial ought to be granted under this rule. On the contrary, the murder was expressly proved, and the facts and circumstances given in evidence pointed strongly, if not unmistakably, to the plaintiffs in error as guilty parties. And indeed, this ground was not relied on in the argument.
The other ground relied on for a new trial involves an important question, and one which does not appear from any reported case to have been decided in Virginia.
In The King v. Mowbry, 6 T. R. 619, several defendants were tried jointly for a misdemeanor, some of whom were convicted and others acquitted, and a question was made, and elaborately argued, whether the court could *grant a new trial to those who had been convicted. It was contended that, according to the forms of law and the course of practice, the new venire facias which would issue after the allowance of a new trial, must correspond with the first, and be for the trial of all the defendants; and that as that could not be, because some had been acquitted, there could not be a new venire facias at all. In support of the motion, Kern’s case was quoted from Buller’s Nisi Pritts, 326, where “an information was exhibited against three, and a verdict against all three, and a new trial granted as to Kern, because he had not sufficient notice given him, and this special cause entered on the record, and judgment was against the other two.” The other side disputed the authority of this case, and quoted the comments of the author, who says, after stating the case as above: “Yet the authority of this case may well be doubted; for where there were several defendants, and the verdict as to some was against evidence, yet the court would not grant a new trial, for they said the verdict must stand or fall in toto. ’ ’
The court held, that a new trial might be granted to the convicted defendants, notwithstanding the acquittal of the others, and put their decision on the ground, that it was essential to secure the ends of justice. They held that the usual forms must be moulded to suit the purpose, and several modes were suggested in which that might be done. Lord Kenyon referred to Kern’s case as an authority in point.
It is laid down in many of the books, that if there be two defendants in a civil action, and there is a verdict in favor of one and against the other, a new trial cannot be granted to the latter, because the verdict, if set aside as to one. must be set aside as to both. That was the view taken by this court in Boswell v. Jones, 1 Wash. 322; though it held otherwise in Guerrant v. Tinder, Gilm. 36. *See also opin *884 ion of the General court in Bithgow’s case, 2 Va. Cases, 297. This question arose in Bricknell v. Dorion, 16 Pick. R. 478, where it was elaborately discussed by Chief Justice Shaw, with a reference to all the English cases up to that time, both in civil and criminal cases. It was held that a new trial might be granted to the defendant against whom the verdict had been rendered, without disturbing the verdict in favor of the other defendant.'
If there is no legal obstacle to the granting of a new trial to one of several defendants in a criminal case, who has been convicted, where another has been acquitted, I do not perceive what legal obstacle there can be to granting a new trial to one, where all have been convicted. The severance of the original joint proceedings is no greater in one case than in the other, and the same power that could mould the ordinary forms to suit the purpose in one case, could do the same in the other. The necessity is not the same where all have been convicted, because a new trial may be had as to all. But the ends of justice demand that the guilty should be punished, as well as that the innocent should be protected. Why should not the ordinary forms be moulded to effect this purpose, when it can involve no injustice to the party to whom the new trial is awarded?
Eern’s case is an authority in point. And Bord Kenyon evidently thought that there was no distinction in principle between a case in which all are found guilty, and a case in which some are found guilty and others not guilty. Eor in deciding a case of the latter kind, he cites one of the former kind as an authority in point. And the same view seems to have been taken by the author of Buller’s Nisi Prius. He refers to a case in which a new trial was refused to one defendant where another was acquitted, as an authority in conflict with Pern’s case, where a new *trial was granted to one of three, all of whom had been convicted.
. I have found no subsequent case in which a new trial was allowed on the motion of one of several defendants, where all had been found guilty, except The Queen v. Gomperty & als., 9 Queen’s Bench R. 824 (58 Eng. C. L. R.). In that case Gomperty and several others were indicted and tried jointly for conspiracy, and were all found guilty. Gomperty and Witham severally moved for a new trial, no such motion being made by either of the other defendants. Upon the affidavits filed by Witham, the court thought that there was sufficient ground for a new trial, and a new trial was granted as to all the defendants. Bord Denman said: ‘ ‘We might perhaps see no ground for disturbing the verdict so far as it affects Gomperty, but into this we do not inquire; for we cannot grant a new trial as to one conspirator, without granting it to all who are convicted. As, therefore, we cannot separate the defendants, there must be a new trial as to all.” Coleridge, J., said: “There would be no difficulty if some had been acquitted and some convicted. That was so in Rex v. Mawbry, 6 T. R. 619, and this court held that a new trial might be granted in favor of those convicted, without disturbing the verdict as to those acquitted.”
This is all that was said by the judges in reference to the new trial. If the decision was not founded on the peculiar character of the offence of conspiracy, the case must be considered as holding, that while the court will mould the ordinary forms of law so as to give a new trial to those who are convicted where some are acquitted, because justice to the convicted parties cannot otherwise be done; they will not do so where all have been convicted, because in that case.the ends of justice may be attained *in reference to the parties improperly convicted, by granting a new trial to all.
But whatever may be the true rule on this subject under the common law, and the practice in England, the case before us must be decided upon the law of Virginia.
At common law, a new trial properly so called, and as distinguished from a venire de novo, cannot be granted in any case of felony; and such, I believe, is still the law of England. In Virginia new trials are granted in cases of felony as well as in cases of misdemeanor. Our modes of proceeding differ from those of the common law. By our law, persons jointly indicted for felony may elect to be tried separately, as matter of right. Code, ch. 208, §§ 14, 15. At common law, no such right exists; but it rests in the discretion of the court, in such case, to .allow or refuse separate trials. United States v. Marchant, 12 Wheat R. 480. Byour statute, where two or more persons are charged and tried jointly, the jury may render a verdict as to any of them as to whom they agree, whereupon judgment shall be entered according to the ‘ verdict; and as to the others, the case shall be tried by another jury. Code, ch. 208, § 35. Upon the principles of the common law, a verdict cannot be received which does not respond one way or the other to the whole issue. By our law, the venire facias issues according to the necessity of each case, and without reference to any previous venire facias in the same case. When several persons have bee'n examined and remanded for trial jointly, a single venire facias issues for the trial of all of them. If they elect to be tried separately, the venire summoned for all, is used for the one first tried, and a several venire facias issues for trial of each of the others. Code, ch. 208, 13-15. And any court in which a person accused of felony is to be tried, may at any time cause a venire facias to issue for his trial. Code, ch. 208, § 6. In a *case under section 35, where the jury have not agreed as to some of the defendants, a new venire facias will, of course, issue for the trial of the others.
The formal difficulty urged in Rex v. Mawbry as a reason why a new trial could *885 not be granted to one of several defendants, and which could only be gotten over by moulding the forms to suit the justice of the case, does not therefore exist in Virginia. Our forms of proceeding present no obstacle to granting a new trial to one, whether the others have been convicted or acquitted. That being so, there is no reason why the court should grant a new trial to one who does not show himself entitled to it, when it grants it to one who does show himself entitled to it. The whole object of a new trial is to secure justice to persons improperly convicted, and there is no reason why it should be extended farther than is necessary to effect that object.
Upon the whole case, I am of opinion that there is no error in the judgment, and that it should be affirmed.
The other judges concurred in the opinion of Joynes, J.
Judgments affirmed.